IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES M. RYAN | : | |
| | : | Case No. 2:13-CV-00880 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Kemp |
| HONORABLE JUDGE STEPHEN | : | |
| L. McINTOSH, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I.       INTRODUCTION

This matter is before the Court on the Defendants' several Motions to Dismiss for lack of Subject Matter Jurisdiction and for Failure to State a Claim (Doc. 9, 10, 13), as well as Plaintiff James M. Ryan's Motion to Strike (Doc. 26). Defendants argue that the Court does not have jurisdiction to hear this case, that they are protected by absolute judicial immunity, and that Plaintiff has failed to state a claim on which relief can be granted. Plaintiff disagrees. For the reasons stated herein, Defendants' Motions are hereby **GRANTED**. This case is **DISMISSED**.

### II.      BACKGROUND

Plaintiff filed his pro se Complaint with the Court on September 5, 2013 (Doc. 2). Plaintiff alleges that, while litigating case No. 05-CVH-11685 in the Franklin County Court of Common Pleas, Defendant DB Midwest LLC filed a motion to declare Plaintiff a vexatious litigator under O.R.C. § 2323.52. (*Complaint*, Doc. 2, ¶ 35). Plaintiff objected, but on August 1, 2012, Defendant Judge Stephen L. McIntosh granted DB Midwest's motion and entered an order declaring Plaintiff to be a vexatious litigator (the "August 1, 2012 Order"). (*Id.*, ¶¶ 37-38). Plaintiff further alleges that Defendant Maryellen O'Shaughnessy, Franklin County Clerk of

Courts, sent a copy of the order to the Supreme Court of Ohio, where Defendant Chief Justice Maureen O'Connor published Plaintiff's name on the Supreme Court's list of vexatious litigators.  (*Id.*, ¶¶ 38-39).

On August 15, 2012, however, Plaintiff appealed the August 1, 2012 Order, and on June 28, 2013, the Tenth District Court of Appeals ruled that Judge McIntosh had erred in granting DB Midwest's motion, on the grounds that a party must commence a separate civil action in order to have a court declare a person a vexatious litigator.  (*Id.*, ¶¶ 40-44) (citing Case Nos. 12-AP-509, 12-AP-685, & 12-AP-722).  The Tenth District remanded the case, and on July 15, 2013, Judge McIntosh entered an order vacating the August 1, 2012 Order.  (*Id.*, ¶ 45).

Plaintiff asserts four claims in this action.  Plaintiff first seeks a declaration that O.R.C. § 2323.52 is unconstitutional on its face, as well as as-applied to Plaintiff by the judges of the Ohio courts.  Plaintiff argues that § 2323.52 has no rational basis in legitimate governmental policy, that it discriminates between classes of persons licensed and unlicensed as an attorney, and that it violates the Privileges and Immunities Clause, the Equal Protection Clause, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  (*Id.*, ¶¶ 31-33).

In Count II, Plaintiff seeks a judgment from this Court finding that "DW Midwest LLC and Stephen L. McIntosh have acted under the Color of Law as State Actor's by their actions against Plaintiff," [sic], the result of which have violated Plaintiff's right of access to the courts in violation of the Constitution of the United States.  (*Id.*, ¶ 46).

Count III alleges similar facts, but further argues that DB Midwest and Judge McIntosh's actions have violated 42 U.S.C. § 1983.  (*Id.*, ¶ 48).  Plaintiff also adds that, in addition to his case before Judge McIntosh, his temporary classification as a vexatious litigator harmed him in his case before Defendant Judge Julie M. Lynch.  (*Id.*, ¶ 51).  Judge Lynch informed Plaintiff

that he would have to comply with the requirements of O.R.C. § 2323.52 prior to making further filings in her case, which Plaintiff alleges prejudiced him in that matter. (*Id.*, ¶¶ 57-58). Plaintiff demands that Judge Lynch recuse herself. (*Id.*, ¶ 58). On account of these various alleged injuries, Plaintiff seeks "a declaration that DB Midwest LLC is civilly liable to Plaintiff for its actions taken in filing [its] Motion," and a declaration that DB Midwest and Judge McIntosh's actions have violated Plaintiff's "rights of access to the Court's of Ohio" [sic] in violation of the United States Constitution and 42 U.S.C. § 1983. (*Id.*, ¶ 65).

In Count IV, Plaintiff argues that DB Midwest is a "debt collector" as defined in 15 U.S.C. § 1692a(6), and that its actions in seeking vexatious litigator status against Plaintiff constitute a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(7). (Doc. 2, ¶¶ 68, 74-75). Plaintiff seeks declaratory judgment to that effect. (*Id.*, ¶ 75).

Finally, in an unnumbered Count, Plaintiff seeks injunctive relief against Defendant Chief Justice O'Connor, to halt the "continu[ed] publishing of his name by The Ohio Supreme Court as a vexatious litigator," as well as prohibiting Judge McIntosh and Judge Lynch from "stating or otherwise publishing in any manner" that Plaintiff is a vexatious litigator as a result of Judge McIntosh's August 1, 2012 Order. (*Id.*, ¶¶ 77, 89). Plaintiff also demands an injunction to halt the enforcement of O.R.C. § 2323.52 "in its entirety," throughout Ohio. (*Id.*, ¶¶ 87-88).

### III. PROCEDURAL POSTURE

On October 2, 2013, Chief Justice O'Connor filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 9). On the same day, Defendants Judge Lynch, Judge McIntosh, and Clerk O'Shaughnessy filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 10). On October 21, Defendant DB Midwest also moved to dismiss (Doc. 13). Plaintiff has responded (*see* Doc. 18, 25, 27), and Defendants have replied (*see* Doc. 24, 28, 29).

Plaintiff also moved to strike various pleadings on account of improper service. (Doc. 26). This Motion provoked an array of filings, some of which were styled as "Notices," but which were, in substance, responses to the Motion to Strike. (*See* Doc. 26, 30, 33, 34, 35).

## IV. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction

As a threshold matter, the Court must decide whether it has subject matter jurisdiction. *City of Heath, Ohio v. Ashland Oil, Inc.,* 834 F. Supp. 971, 975 (S.D. Ohio 1993) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)). A defendant may challenge subject matter jurisdiction by filing a motion to dismiss under Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir. 1986). In reviewing a factual attack on subject matter jurisdiction, no "presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). The court may allow "affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

The Court must liberally construe Plaintiff's *pro se* pleadings. *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *West v. Adecco Employment Agency,* 124 F. App'x. 991, 992 (6th Cir. 2005) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). The Supreme Court, however, has "never suggested procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id.* (quoting *McNeil v. United States,* 508 U.S. 106, 113 (1993)). A *pro se*

4

litigant "must conduct enough investigation to draft pleadings that meet the requirements of the federal rules." *Id.* (quoting *Burnett v. Grattan,* 468 U.S. 42, 50 (1984)).

### B. Pleading Requirements

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Rather, the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### V. ANALYSIS

#### A. Chief Justice O'Connor's Motion to Dismiss

Chief Justice O'Connor argues that Plaintiff's claim against her should be dismissed because the Court lacks subject matter jurisdiction, on account of the fact that Plaintiff's requested relief related to her – that is, the removal of his name from the vexatious litigator list – has already been accomplished. (Doc. 9 at 2). Chief Justice O'Connor directs the Court to an

affidavit submitted in support of her motion, attesting to the fact that Plaintiff's name was removed from the list as soon as Judge McIntosh issued his order vacating the August 1, 2012 Order. (*Id.*). Chief Justice O'Connor adds that such extrinsic evidence is appropriate when determining subject matter jurisdiction, and does not convert the Motion into one for summary judgment. (*Id.*). Without a live case or controversy, Chief Justice O'Connor asserts, this Court lacks jurisdiction to proceed. (*Id.* at 3). This "case or controversy requirement" is a necessary element of a federal case from start to finish, and the Plaintiff bears the burden of demonstrating that he has a legally cognizable interest in the outcome at all stages. (*Id.* at 3-4). Because Plaintiff can no longer point to such a "live" interest, Chief Justice O'Connor concludes, his claim against her must be dismissed. (*Id.* at 4).

      Plaintiff responds that Chief Justice O'Connor's Motion relies too heavily on extrinsic evidence. He faults Chief Justice O'Connor for not including Judge McIntosh's order vacating his August 1, 2012 Order (Doc. 25 at 1), as well as the "notice" that the Supreme Court of Ohio received relating to that order (*id.* at 2), and for not allowing him opportunity to cross-examine the affiant Amy Reitz, Chief Deputy Clerk of the Supreme Court of Ohio (*id.*). Plaintiff also asserts that "a controversy exists as it relates to Ryan's claims against Chief Justice O'Connor," without alleging anything further. (*Id.*). Plaintiff then suggests that "it now appears that Chief Justice O'Connor acting individually and in her official capacity . . . is as responsible for th[e] wrongful act [of publishing his name on the vexatious litigator list] as Defendants McIntosh and DB Midwest LLC." (*Id.* at 4). He accuses Chief Justice O'Connor of acting negligently in not removing his name from the list earlier (*id.*), and argues that his request for a preliminary and permanent injunction applies to all judges in Ohio, including Chief Justice O'Connor (*id.* at 5).

6

Plaintiff misunderstands the "case or controversy" requirement of the United States Constitution. It is axiomatic that a legally cognizable interest is required at every stage of litigation in the federal courts. *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir. 2011). In this case, Plaintiff has, in relation to Chief Justice O'Connor, requested only one action – removal of his name from the vexatious litigator list. (Doc. 2, ¶ 86). Regardless of whether this Court accepts the affidavit submitted in support of Chief Justice O'Connor's Motion, it is free to take judicial notice of the Ohio Supreme Court's website, which includes the very same vexatious litigator list of which Plaintiff complains. *See Marshek v. Eichenlaub*, 266 F. App'x 392 (6th Cir. 2008) (per curiam); *see also Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Plaintiff's requested relief has already been granted,[1] and his claim is moot. Accordingly, the Court lacks jurisdiction to proceed with regard to Chief Justice O'Connor. To the extent that Plaintiff seeks *prospective* relief invalidating O.R.C. § 2323.52, his removal from the vexatious litigator list is equally conclusive: without an "actual or imminent" legally cognizable injury that is "concrete and particularized," he does not have standing to pursue his claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In addition, insofar as Plaintiff has implied a new cause of action against Chief Justice O'Connor, for defamation, libel, or negligence (*see Plaintiff's Response*, Doc. 25, at 4), the Court will not entertain new claims raised in a memorandum in opposition. *See* Fed. R. Civ. P. 15(a)(2) (requiring leave of court to amend complaint after initial 21-day period for amendment of right has elapsed). Moreover, Plaintiff's new allegations do not state claims under § 1983, and are barred by judicial immunity, as discussed below.

Accordingly, Chief Justice O'Connor's Motion is hereby **GRANTED**.

---

[1] *See* http://www.supremecourt.ohio.gov/Clerk/vexatious/, last accessed February 12, 2014.

**B. Judge McIntosh, Judge Lynch, and Clerk O'Shaughnessy's Motion to Dismiss**

Defendants McIntosh, Lynch, and O'Shaughnessy have also filed a Motion to Dismiss (Doc. 10), arguing that Plaintiff's claims against them – Counts II and III – should be dismissed on the grounds that Plaintiff's suit is barred by the *Rooker-Feldman* doctrine[2], as well as by the doctrine of judicial immunity. Defendants argue that, under this doctrine, it is well established that "lower district courts [lack] subject matter jurisdiction to directly review state court decisions," which "only the Supreme Court of the United States has the jurisdiction to review." *Coleman v. Caruso*, 413 F. App'x 866, 870 (6th Cir. 2011) (per curiam). If "the source of the injury" is the state court decision, "then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

Defendants in particular point to *Coleman*, where the Sixth Circuit upheld dismissal of the plaintiffs' claims challenging the constitutionality of a Michigan statute which required them to pay fees prior to filing civil actions. 413 F. App'x at 868. The plaintiffs had been denied their attempt to file pro se civil claims in state court, because they could not pay the court fees prior to filing, and brought suit in federal court challenge the constitutionality of the statute at issue, and the enforcement thereof by state officials and judges. *Id.* The Court of Appeals explained that *Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 870 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Ultimately, the court found that the plaintiff's claims were barred by *Rooker-Feldman* because the source of their injury "originates from the state court's application of the statute to Plaintiffs," either through refusal to file

---

[2] This doctrine is based on the Supreme Court's holdings in *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 206 (1983).

8

judicial-review claims, or through refusal to grant fee waivers. *Id.* at 872. And any prospective injunctive relief was also barred, because such relief would be predicated on a determination that the state court's prior decision to deny fee waivers was improper. *Id.*

In response, Plaintiff argues that application of *Rooker-Feldman* is incorrect in this case, because he is not asking the Court to review a state court judgment, but rather challenges only the constitutionality of O.R.C. § 2323.52. Defendant relies heavily on the Sixth Circuit's decision in *Evans v. Cordray*, 424 F. App'x. 537 (6th Cir. 2011), decided two months after *Coleman*. In that case, the Court of Appeals held that the *Rooker-Feldman* doctrine does *not* bar a challenge to the constitutionality of O.R.C. § 2323.52, when the plaintiff was not seeking "relief from the state domestic court's decisions to deny him leave to proceed," but rather "prospective and permanent injunctive relief against [the Ohio Attorney General] . . . from applying Ohio's vexatious litigator statute against Plaintiff," as well as "permanent injunctive declaratory relief" that § 2323.52 is unconstitutional as it applies to a certain class of litigants. *Id.* at 540. In short, the source of that plaintiff's injury was "Ohio's allegedly unconstitutional present and future enforcement of § 2323.52's remedial provisions in divorce proceedings, not the domestic court's prior interlocutory decisions denying him leave to proceed." *Id.*

Plaintiff is only partially correct. With regard to Count I of his Complaint, challenging the constitutionality of § 2323.52, Plaintiff, like the plaintiff in *Evans*, "is not seeking relief from [the judgment] that he is a vexatious litigator." *Id.* at 541. Indeed, Plaintiff's vexatious litigator status has already been vacated, and his name removed from the Ohio Supreme Court's list. To the extent that Plaintiff's injury is *not* the Ohio court's decision to deny his various motions on account of his vexatious litigator status, "but rather the alleged unconstitutionality of § 2323.52," *id.*, the Court is not deprived of subject matter jurisdiction.

9

With regard to Counts II and III, however – the portions of his Complaint directed at Judge McIntosh, Judge Lynch, and Clerk O'Shaughnessy – Plaintiff's requested relief is barred by *Rooker-Feldman*. This portion of Plaintiff's Complaint falls squarely within *Coleman*'s bar against state-court litigants "complaining of injuries caused by state-court judgments," where the source of the injury "originates from the state court's application of the statute to Plaintiffs." 413 F. App'x at 870, 872. Plaintiff in fact requests "[a] declaration that . . . [Judge McIntosh's] actions violated Plaintiff's Due Process and Equal Protection rights," (*Complaint*, Doc. 6, ¶ 9), that [Judge McIntosh "[was] acting as [a] State Actor whose coordinated actions were made under the Color of State Law in violation of the Civil Rights Act . . . in [his] attempt to declare Plaintiff a vexatious litigator," (*id.*, ¶ 11), that Judge McIntosh's "[g]ranting of DB Midwest's Motion . . . and his issuing the Order declaring [Plaintiff] a Vexatious Litigator were void *ab initio* and . . . Stephen L. McIntosh [is] subject to civil liability for damages for [his] libelous and demeaning acts," (*id.*, ¶ 13), and that Judge Lynch be prohibited "from stating in any manner in any proceeding before her Court that Plaintiff is a vexatious litigator as determined by [Judge McIntosh's] Order," (*id.*, ¶ 15). (*See also id.*, ¶¶ 46, 48, 53, 58-59, 64-65). These attacks on injuries caused by a state-court judgment are precisely the sort that *Rooker-Feldman* forecloses.

Furthermore, the claims against Defendants are also barred by absolute judicial immunity. It is well-settled that judges "enjoy judicial immunity from suits arising out of the performance of their judicial functions."[3] *Leech v. Deweese*, 689 F.3d 538, 542 (6th Cir. 2012) (quotation omitted). This immunity applies in suits under 42 U.S.C. § 1983, *id.*, and to requests for injunctive relief, *Coleman*, 413 F. App'x at 873. It extends "to any person acting as an arm

---

[3] The Ohio courts of common pleas have "original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts." O.R.C. § 2305.01; *see also* Ohio Const. art. IV, § 4(B). Ohio courts of common pleas also have subject-matter jurisdiction for actions under Ohio's vexatious litigator statute. *See* O.R.C. § 2323.52(B).

10

of the absolutely immune judicial officer," such as the Court Clerk. *Id.* (citing *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). And it adheres even "where a judge acts corruptly or with malice." *Leech*, 689 F.3d at 542. Judicial immunity is abrogated only in the complete absence of subject matter jurisdiction.[4] *Id.* Even "grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity." *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001) (citing *Stump v. Sparkman*, 435 U.S. 349, 359-60 (1978)).

Plaintiff responds only by once again invoking *Evans v. Cordray*. (*Plaintiff's Response*, Doc. 18, at 10). Plaintiff argues that if the Court were to find that Plaintiff's claims were barred by judicial immunity, it would "reverse the findings of *Evans v. Cordray*," which, he asserts, "specifically decide[d] the precedent for this Court establishing the law and jurisdictional requirements to state a claim . . . challenging the constitutionality of [O.R.C. § 2323.52]." (*Id.*). Plaintiff also claims, without citation to authority, that only claims for money damages are barred by judicial immunity.

Plaintiff is mistaken. While *Evans* may be relevant for the Court's analysis of the *Rooker-Feldman* doctrine, as discussed above, nothing in that case touched on the doctrine of judicial immunity. *Compare Stanton v. Hutchins*, No. 1:10-CV-74, 2010 WL 1418563 (W.D. Mich. Apr. 7, 2010) (noting that judicial immunity and the *Rooker-Feldman* doctrine are separate grounds for dismissal). Moreover, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Plaintiff has made no argument as to how Judge McIntosh or Judge Lynch acted "in the complete absence of all

---

[4] The only other except to judicial immunity – when a judge performs "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity" – is not applicable here, as Plaintiff repeatedly refers to Judge McIntosh's August 1, 2012 Order, as well as Judge Lynch's various orders in her case. Plaintiff does not make any references to actions done outside the judges' judicial capacity.

jurisdiction"; indeed, even if a judge is corrected on appeal, judicial immunity is not lost. *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *see also Gibson v. Roush*, 587 F. Supp. 504, 506 (W.D. Mich. 1984).  In short, Plaintiff has offered no valid argument against judicial immunity.

Accordingly, Judge McIntosh, Judge Lynch, and Clerk O'Shaughnessy's Motion is hereby **GRANTED**.

### C. Motion to Strike

Before considering DB Midwest's Motion to Dismiss (Doc. 13), the Court must first address Plaintiff's Motion to Strike for failure to comply with Fed. R. Civ. P. 5(b)(C) (Doc. 26). Plaintiff argues that DB Midwest improperly served the Motion, that he never received it, and that he was only able to obtain a copy at his own cost, via the Court's PACER online access service. (*Id.* at 2).  Thus, he asks that the Motion be stricken.  Plaintiff reiterates this request in a later filing, in which he also withholds his consent to further adjudication by the Magistrate Judge. (Doc. 30).  In continued filings (Doc. 34), Plaintiff argues that he received some of DB Midwest's papers, but maintains that he was never properly served with DB Midwest's Motion to Dismiss.  On February 3, 2014, DB Midwest notified the Court that it again sent to Plaintiff its Motion to Dismiss, via certified mail.  (Doc. 35).

Plaintiff's Motion to Strike is without merit.  Local Rule 5.2(a) requires service in compliance with Fed. R. Civ. P. 5(d).  Nothing in either rule disqualifies the use of regular U.S. Mail as a method of service for pleadings and other post-Complaint documents.  Local Rule 5.2(a) requires only that the party filing the pleading submit proof of service with or attached to their papers, and that such proof "shall state the date and manner of service, including the name of the person(s) served and the address(es) to which service was directed."  S.D. Civ. R. 5.2(a).

DB Midwest has complied with these requirements in serving[5] its Motion to Dismiss on Plaintiff. (*See* Doc. 13 at 8). Considering that Plaintiff has fully briefed the Motion, he cannot point to any prejudice he might have suffered on account of a delay in receiving service. Plaintiff has presented no reasonable grounds for striking this pleading.

Accordingly, Plaintiff's Motion to Strike (Doc. 26) is hereby **DENIED**.

### D. DB Midwest's Motion to Dismiss

Defendant DB Midwest moves to dismiss the claims against it, on the grounds that Plaintiff has failed to state a claim on which relief can be granted, because it is not a "state actor" for the purposes of 42 U.S.C. § 1983, and because Plaintiff's claim under the FDCPA is barred by the applicable statute of limitations. In addition, Plaintiff joins and adopts the *Rooker-Feldman* argument pressed by Judge McIntosh, Judge Lynch, and Clerk O'Shaughnessy.

DB Midwest argues that it cannot be liable under Counts II and III of the Complaint, because § 1983 applies only to a "state actor" who acts "under color of law." *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009). In order for a private party to be considered a state actor for purposes of § 1983, Plaintiff must satisfy one of three tests: (1) the "public function" test, requiring that the private entity exercise powers traditionally exclusively reserved to the state, such as running an election or claiming eminent domain; (2) the "state compulsion test," requiring proof that the state encouraged or coerced the private party to take a particular action; or (3) the "nexus" test, requiring a "sufficiently close relationship" such as through state regulation or contract, such that the private party's actions may be attributed to the state. *Id.*

Plaintiff does not directly counter this argument. Despite his ample filings, Plaintiff offers only the fact that his "Complaint alleged that DB Midwest and Defendant McIntosh were

---

[5] The Court notes, furthermore, that Plaintiff's address currently on file is unchanged from the address to which DB Midwest first mailed its Motion to Dismiss.

13

acting as State Actors by coordinating their joint action under the Color of State Law." (*Plaintiff's Response*, Doc. 27, at 3).  He repeatedly asserts that DB Midwest and Judge McIntosh "act[ed] jointly together," (*see, e.g.*, *id.*, at 4-6, 8), but does not explain further.

      This is not enough.  Although the Court must draw all inferences in favor of Plaintiff, it is not required "to accept as true mere legal conclusions unsupported by factual allegations." *Iqbal*, 556 U.S. at 664.  Plaintiff must do enough to raise his right to relief "above the speculative level," *Twombly*, 550 U.S. at 555, a threshold he has failed to meet.  In order to succeed in claiming that DB Midwest and Judge McIntosh colluded to declare Plaintiff a vexatious litigator, he must allege facts sufficient to show that they "acted together" to such a degree that DB Midwest's actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 923 (1982).  Merely "resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).  Rather, Plaintiff must show that: "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Wellman v. PNC Bank*, 508 F. App'x 440, 442 (6th Cir. 2012).  Plaintiff here fails to do more than offer bare legal conclusions, without a single supporting allegation.  His constitutional claims against DB West must be dismissed.

      DB Midwest also challenges Plaintiff's claim against it under the FDCPA, 15 U.S.C. § 1692, *et seq.*, on the ground that it is barred by the limitations period.  Under 15 U.S.C. § 1692k(d), any action to enforce liability created under the FDCPA must be brought "within one year from the date on which the violation occurs."  As this Court has explained, the limitations period begins to run at "the moment the violation occurs, without regard to when the plaintiff gained knowledge of the violation." *Bihn v. Fifth Third Mortgage Co.*, No. 3:13-CV-00057,

2013 WL 5657598 (S.D. Ohio Oct. 16, 2013).  Thus, DB Midwest argues that Plaintiff's claim under the FDCPA is barred, since, even assuming its motion to declare Plaintiff a vexatious litigator was improper, that motion was filed in June 18, 2012, more than one year before the commencement of this action.  Furthermore, Judge McIntosh's August 1, 2012 Order granting DB Midwest's Motion also occurred more than one year prior to this case.  DB Midwest therefore asks that this claim be dismissed.

Plaintiff responds that the relevant date is when the Tenth District Court of Appeals issued its decision, on June 28, 2013.  He asserts that he was not aware of his cause of action prior to this point, and that the statute of limitations should be tolled under the "discovery rule" and the doctrine of "equitable tolling."  (Doc. 27 at 10).  Plaintiff argues that tolling is appropriate here, since he could not know how the Tenth District would rule, or that the Defendants would be so dilatory in removing his name from the vexatious litigator list.

The "discovery rule" provides that "the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury."  *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).  Equitable tolling allows courts to toll a statute of limitations when "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).  Plaintiff bears the burden of proving his entitlement to equitable tolling.  *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

Plaintiff again misapplies the relevant law.  Although Plaintiff could not have known how the Tenth District would rule, that is not the basis of his claim.  Rather, even presuming that DB Midwest's action in moving for vexatious litigator status was harmful, the injury was done to

15

Plaintiff on the date the motion was filed, or, at latest, when Judge McIntosh issued his August 1, 2012 Order.  The Tenth District did *not* find § 2323.52 unconstitutional.  *See Whipps v. Ryan*, Nos. 12AP-509, 12AP-685, 12AP-722, 2013-Ohio-2772, ¶¶ 8-11 (Ohio App. June 28, 2013).  Plaintiff's cause of action, if any, accrued at least by August 1, 2012, and at that time he had all the information necessary in order to bring his claim.  There is no basis in equity for tolling the statute of limitations.  Even supposing that the "discovery rule" applies to the FDCPA, Plaintiff had sufficient information, by his own admission, to bring his claim within the time allotted.

Accordingly, DB Midwest's Motion is hereby **GRANTED**.

## VI.     CONCLUSION

For the reasons stated above, Plaintiff has failed to establish subject matter jurisdiction and has failed to state a claim upon which relief may be granted.  Defendant Chief Justice O'Connor's Motion to Dismiss (Doc. 9) is **GRANTED**.  Defendants Judge McIntosh, Judge Lynch, and Clerk O'Shaughnessy's Motion to Dismiss (Doc. 10) is **GRANTED**.  Defendant DB Midwest's Motion to Dismiss (Doc. 13) is **GRANTED**.  Plaintiff's Motion to Strike (Doc. 26) is **DENIED**.  The matter is hereby **DISMISSED**.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　  s/ Algenon L. Marbley
　　　　　　　　　　　　　　　　　　　　　　**ALGENON L. MARBLEY**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**DATED:  February 12, 2014**